UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FREDRICK L. HODGES,
   Plaintiff,

vs.                                                              No. 09-1211,

STEVE SETTINGARD, et.al.,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the Defendants' motion for summary judgement. [d/e 28]

### I. BACKGROUND

The Plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 against seven Peoria Police Officers including Chief Steve Settingsgaard and Officers Daniel Duncan, Chad Batterham, Erin Barisch, Brad Dixon, John Couve and Officer Miller. On July 10, 2009, the court conducted a merit review of the Plaintiff's complaint and found that he had alleged the following claims:

a) The named Defendants used excessive force during their stop and arrest of the Plaintiff on August 1, 2007.

b) The named Defendants violated the Plaintiff's Fourth Amendment rights when he was forced to stand without his pants in front of several people while police searched for drugs on August 1, 2007. *See* July 10, 2009 Merit Review Order.

The Defendants have filed a motion for summary judgement. [d/e 28, 29] The Plaintiff was notified that a dispositive motion had been filed and that he must file a response within 21 days. [d/e 30]. The Plaintiff requested additional time to file a response which was granted. [d/e 32; September 30, 2010 Text Order] The Plaintiff has failed to file any further response to the summary judgement motion. Therefore, the court will consider the motion without input from the Plaintiff.

### II. FACTS

On August 1, 2007, Defendants Duncan, Barish, Dixon, Couve and Miller were police

1

officers for the Peoria City Police Department. Defendant Settingsgaard was the Superintendent of the Peoria Police Department. On August 1, 2007, a Peoria County Circuit Court Judge from the Tenth Judicial Circuit in Illinois found probable cause to authorize a search warrant for the Plaintiff's Peoria home. The warrant included the Plaintiff and any vehicles found at the premises. (Def. Mot, Ex. 8). The complaint for the search warrant claimed that the Plaintiff was known to drive a maroon Chevy Monte Carlo to deliver crack cocaine.(Def. Mot, Ex. 8).

On August 1, 2007, Officers Duncan, Batterham, Barisch, Dixon, Couve and Miller joined other officers from the Peoria Police Department's vice and narcotics unit to execute the search warrant. Defendant Settingsgaard was not on the scene and was not personally involved in the stop, arrest or search of the Plaintiff. (Def. Mot, Ex. 7, p. 1); *see also (*Def. Mot.Ex. 1, p. 2, Ex. 2, p. 2, Ex. 3, p. 4, Ex 4, p. 3, Ex 5, p. 1).

Defendant Officer Couve says he was assigned to watch the rear of the Peoria residence when he saw the Plaintiff pull up in the Maroon Monte Carlo and park the vehicle. (Def. Memo, Couve Aff, Ex. 1, p. 1-2) Couve says he watched the Plaintiff go inside the residence, but a passenger in the car remained in the vehicle. A few minutes later, the Plaintiff returned and the passenger got out. The officers recognized this individual and saw the Plaintiff hand something to the passenger. They both got back in the car and they began to back out of the alley behind the residence. It was at this point the officers say they began to execute the search warrant. (Def. Memo, Couve Aff, Ex. 1, p. 2).

Defendant Officer Barisch says he drove his vehicle behind the Plaintiff to prevent him from leaving. (Def. Memo, Bar. Aff, Ex. 3, p. 2) Barisch says the officers were wearing police department issued black vests with large bold lettering that said "POLICE." (Def. Memo, Bar. Aff, Ex 3, p. 1). Officer Barisch says the Plaintiff jumped out of his vehicle and began running. Officer Barisch says he began chasing the Plaintiff and yelled "Police, stop, you're under arrest." (Def. Memo, Bar. Aff, Ex. 3, p. 2; Dixon Aff., p. 2). Officer Barisch says the Plaintiff continued to run. When the officer was approximately ten feet from the Plaintiff, he says he took out his "X-26" taser located on his vest and "deployed the taser towards (the Plaintiff) for one cycle." (Def. Memo, Bar. Aff, Ex. 3, p. 2) Officer Barisch says he was the only officer on the scene to use his taser. (Def. Memo, Bar. Aff, p. 4). The probes from the taser landed in the upper and lower back area of the Plaintiff and he immediately tensed up and fell forward. Officer Barisch says he then handcuffed the Plaintiff while he was on the ground and removed the probes. (Def. Memo, Bar. Aff, Ex. 3, p. 2) Officer Barisch says the only visible injuries he observed were two small abrasions from the taser probes. Officer Barisch says at no time during the stop, arrest or search of the Plaintiff did he verbally or in any other way indicate that he was having problems breathing or that he was in pain. (Def. Memo, Bar. Aff, Ex. 3, p. 2 -3; Dixon Aff., p. 2, 4; Miller Aff., p. 2).

Officer Barisch says Officer Dixon arrived on the scene shortly after. The officers

2

observed the Plaintiff attempting to roll over and reach into his rear pants pocket. Both officers told the Plaintiff to stop moving and reaching into his pants, but the officers say he ignored their commands.(Def. Memo, Bar. Aff, Ex. 3, p. 3; Dixon Aff., p. 2)  As a result, Officer Barisch says he pulled the Plaintiff's waistband up away from his body and observed a white plastic bag that appeared to contain crack cocaine.  (Def. Memo, Bar. Aff, Ex. 3, p. 3;  Dixon Aff., p. 2)   The officers say at no time during the search of the Plaintiff at the scene did any officer conduct a full strip search or body cavity search.  (Def. Memo, Bar. Aff, Ex. 3, p.  3;  Dixon Aff., p. 2-3; Miller Aff., p. 2).  In addition, the officers say they did not observe any bystanders either outside or looking out of nearby homes.  (Def. Memo, Bar. Aff, Ex. 3, p. 3-4)

Officer Barisch says soon after they discovered the plastic bag in the Plaintiff's pants, Officer Miller videotaped the area on the Plaintiff's body where the bag was found as well as the area where the taser made contact with the Plaintiff's skin.  (Def. Memo, Bar. Aff, Ex. 3, p. 4; Miller Aff., p. 2)

Officers Duncan, Batterham and Miller were not involved in the chase, arrest or search of the Plaintiff on August 1, 2007.  (Def. Memo, Bar. Aff, Ex. 3, p. 4; Duncan Aff, p. 2, Butter. Aff, p. 2; Dixon Aff, p. 3).

The Plaintiff filed a motion to quash the search conducted on August 1, 2007 in *People v. Fredrick Hodges,* Case No. 07-CF-857 filed in the Peoria County Circuit Court. The motion claimed that the Plaintiff was strip searched and his buttocks were exposed to bystanders.  The Plaintiff also claimed that after he was hit with the taser, he was having problems breathing. (Def. Mot, Ex. 9).  The motion was denied and the Plaintiff ultimately plead guilty to drug charges.

The Defendants have provided a copy of the recording taken during the execution of the search warrant. (Def. Mot, Ex. 11). The recording shows the Plaintiff laying on the ground with his hands handcuffed behind him.  An officer pulls up the waistband of his jeans to show the camera a bag of a white substance between his body and his pants.  The Plaintiff's buttocks are exposed as the bag is removed and the Officers visually look to see if any other contraband is in his pants.  The Plaintiff's pants are then pulled back up.  The recording also shows two small marks on the Plaintiff's back.  The Plaintiff does not appear to be in any physical distress, nor does he appear to be having problems breathing.  There are no other individuals, besides Police Officers, visible in the recording.  The officers are wearing black police vests.

III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Any discrepancies in the factual record should be evaluated in the nonmovant's

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

III. ANALYSIS

A. INVOLVEMENT OF DEFENDANTS

The Defendants argue that Defendants Settingsgaard, Duncan, Batterham, Dixon, Couve and Miller are entitled to summary judgement because there is no evidence they participated in or caused the alleged constitutional violations. There is no evidence before this court that Superintendent Settingsgaard was personally involved in the stop, arrest or search of the Plaintiff. The court will dismiss this Defendant. In addition, there is no evidence Officers Duncan, Batterham, Dixon, Couve and Miller used any force against the Plaintiff. Only Officer Barisch deployed his taser against the Plaintiff. The court will dismiss these Defendants from the Plaintiff's claim of excessive force.

The Defendants also claim there is no evidence any Officer besides Barisch was involved in the search of the Plaintiff. However, both the Plaintiff's complaint and the Defendants' response indicate that Defendants Dixon and Miller were on the scene during the search of the Plaintiff's pants. Therefore, the court will dismiss Defendants Settingsgaard, Duncan, Batterham and Couve from the Plaintiff's second claim, but the Plaintiff may proceed with this claim that Defendants Barisch, Dixon and Miller violated his Fourth Amendment rights.

B. COLLATERAL ESTOPPEL

The Defendants argue that the Plaintiff made the same allegations concerning his search in a motion to quash in his state criminal case and is therefore barred from relitigating those issues. The doctrine of collateral estoppel, or issue preclusion, applies to actions under §1983 *Allen v McCurry,* 449 U.S. 90 (1980). " If a party has had a full and fair opportunity to litigate an

4

issue in one proceeding and loses, he will be prevented from raising the same issue in another proceeding." *Rankins v Winzeler,* 2003 WL 21058536 at 6 (N.D.Ill. May 9, 2003). Collateral estoppel applies when: 1) the issue sought to be precluded is the same as that in the prior action; 2) the issue was actually litigated; 3) determination of the issue was essential to the judgement; and 4) the party to be estopped was fully represented in the prior action. *Chicago Truck Drivers Union Pension Fund v Century Motor Freight, Inc.,* 125 F.3d 526, 530 (7th Cir. 1997).

The Plaintiff did file a motion to quash and suppress evidence in his criminal trial. (Def. Mot., Ex. 9, p. 11-13). The Plaintiff claimed his arrest, search and seizure violated the Fourth, Fifth, Sixth and Fourteenth Amendment of the Constitution as well as the Illinois Constitution. (Def. Mot, Ex. 9, p. 13). The Defendants have provided a copy of the transcript from the resulting hearing in the Plaintiff's state court criminal case. (Def. Mot, Ex 10). The Plaintiff was represented by counsel and Defendant Officers Barisch and Dixon were called as witnesses. (Def. Mot, Ex 10, p.1). The Plaintiff testified that the Defendants subjected him to a body cavity search while he was laying face down on the street. (Def. Mot, Ex 10, p.11). The Plaintiff also claimed he was left with his pants pulled down for several minutes. (Def. Mot, Ex 10, p.13). The Plaintiff did not claim that he was forced to stand on his feet with his pants down. The Officers testified that there was never a body cavity search. (Def. Mot, Ex 10, p. 30-31). The Officers stated that the Plaintiff's pants were never down more than an inch or two and the bag of cocaine was clearly visible between his body and his pants. (Def. Mot, Ex 10, p. 30). The court considered the testimony as well as the videotape taken by Officer Miller at the scene. The court did not memorialize its analysis, but did deny the Plaintiff's motion. The Plaintiff eventually plead guilty to two counts of Unlawful Possession with Intent to Deliver a Controlled Substance.(Def. Mot, Ex. 9, p 7-8).

The court agrees that the Plaintiff cannot relitigate the August 1, 2007 search in federal court. The Plaintiff raised the identical issue in his state court criminal proceeding. The search was the basis of the hearing and the decision by the state court. The Plaintiff was allowed a full and fair hearing with representation by counsel, an opportunity to testify, an opportunity to view the videotape and an opportunity to cross examine the officers involved in his search. *See Johnson v City of Aurora,* 1997 WL 684987 (N.D. Ill Oct. 30, 1997)(collateral estoppel barred relitigation of Fourth Amendment search and seizure issue determined against §1983 claimant in state criminal suppression hearing.)*; see also Anderson v. City of Chicago*, 2004 WL 626528 at 6 (N.D.Ill. March 29, 2004)(" If the elements of collateral estoppel are met, then this Court must accept the state court's determination of the Fourth Amendment issue"); *Allen v. McCurry*, 449 U.S. 90 (1980). The Defendants motion for summary judgement is granted as to the Plaintiff's Fourth Amendment claim involving the August 1, 2007 search.

C. EXCESSIVE FORCE

The Defendants also argue that the Plaintiff has failed to demonstrate that Officer Barisch used excessive force on August 1, 2007. Excessive-force claims in the context of an arrest are reviewed under the Fourth Amendment's objective-reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir.2005). This standard requires an examination of the "totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir.2000). The nature and extent of the force that may reasonably be used to arrest an individual depends on the specific circumstances including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."*Graham,* 490 U.S. at 396. "Because law-enforcement officers must make critical, split-second decisions in difficult and potentially explosive situations, we evaluate the reasonableness of the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) *citing Graham*, 490 U.S. at 396-97. The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases, instead the test is whether what the police officers did was reasonable. *Plakas v. Drinski,* 19 F.3d 1143, 1149 (7th Cir. 2004).

In this case, the evidence before the court demonstrates that Officer Barisch was involved in executing a valid search warrant that specifically identified the Plaintiff, his residence and his vehicle. An informant stated that the Plaintiff stored illegal drugs in his house and sold those drugs from his vehicle. (Def. Mot, Ex. 8). Officer Barisch observed the Plaintiff go into his house and bring something out that he gave to the vehicle passenger. The Plaintiff then got back in his car. When the officers pulled up, the Plaintiff began running and admits he was running as fast as he could from the officers. (Def. Mot, Ex. 10, p. 7). The officers claim they yelled to identify themselves and tell the Plaintiff to stop. The officers also say they were wearing large black vests that identified them as "POLICE." (Def. Memo, Bar. Aff, Ex 3, p. 1).

The Plaintiff did not respond to the dispositive motion, but in his complaint alleges that he did not know the individuals were officers. Nonetheless, the recording shows the officers were wearing black police vests and at least one of their cars had a flashing light on the dashboard. The Plaintiff also claims in his complaint that he had just started to run when Officer Barisch deployed his taser. The recording of the stop shows that the Plaintiff actually crossed an alley, had run through a yard and was approaching another street when he went down. The Plaintiff also claims he began to have problems with his asthma and was having difficultly breathing. Again, the recording shows the Plaintiff laying handcuffed on the ground. He is in no obvious distress or pain and he is not exhibiting any problems breathing. The Plaintiff is able to clearly respond to an officer's question asking him to provide his name and date of birth. The recording also shows two very small abrasions to the Plaintiff's back where he was hit with the taser probes.

6

The recording contradicts the Plaintiff's version of events and there are no allegations or indications that this recording was doctored or altered in any way. "[W]hen a court analyzes a summary judgment motion, the court can and should accept as true the facts depicted by unchallenged video recordings where a reasonable jury could not reject that evidence." *Marion v. City of Corydon, Ind.*, 2008 WL 763211 at 1(S.D.Ind. March 20, 2008), *citing Scott v. Harris*, 550 U.S. 372, 379 (2007).

The court finds that based upon the uncontradicted evidence before the court and the evidence in the recording, Officer Barisch was not unreasonable when he deployed his taser one time to stop the Plaintiff from fleeing the scene. *See Owens v. Fox*, 2010 WL 1408920 (D.Del., March 20, 2010)(no excessive force where officers suspected the Plaintiff was drug dealer, observed what appeared to be two drug sales, and Plaintiff ran when police attempted to arrest him); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir.2004)("single use of the taser gun causing a one-time shocking" against a "hostile, belligerent, and uncooperative" arrestee in order to make an arrest, under the totality of the circumstances, was not excessive force);*Zivojinovich v. Barner*, 525 F.3d 1059, 1071-73 (11th Cir.2008) (use of a taser to subdue a suspect who had repeatedly ignored police instructions and continued to act belligerently found to be reasonably proportionate to the need for force); *Gruver v. Borough of Carlisle*,2006 WL 1410816 (M.D.Pa. May 19, 2006) (no excessive force when use of taser was consistent with level of resistance and there was no indication police officers applied any gratuitous force); *Overton v Hicks*, 2008 WL 2518229 (S.D.Ind., June 17, 2008)(it was reasonable for officer to use taser and dog when evidence showed plainiff was refusing commands to get out of car and was instead revving his car's engine and fumbling with the steering column when officers were standing by car). The motion for summary judgment on the Plaintiff's second claim of excessive force is also granted.

**ITS IS THEREFORE ORDERED that:**

**1) The Defendants' motion for summary judgment is granted pursuant to Fed. R. Civ. P. 56. [d/e 28] The clerk of the court is directed to enter judgment in favor of the Defendants in accordance with this order. The parties are to bear their own costs. This case is terminated.**

**2) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-**

**meritorious, the Plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 26th day of January, 2011.


              **s/Joe Billy McDade**
_____
              JOE BILLY MCDADE
       UNITED STATES DISTRICT JUDGE